UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
————————————————————x

THOMAS GRIFFITHS,                               Civil Action No:

                   Plaintiff,        **COMPLAINT**
                                                **Jury Trial Demanded**

     -against-

COUNTY OF CHEMUNG, WILLIAM
SCHROM, and JOYCELYN BERMINGHAM,

               Defendant.
————————————————————x

     PLAINTIFF THOMAS GRIFFITHS, by his attorneys Goddard Law, PLLC whose offices

are located at 39 Broadway, Suite 1540, New York, NY 10006, alleges upon knowledge with

respect to himself, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

     1.     This is a civil action brought on behalf of Plaintiff Thomas Griffiths ("Plaintiff")

against Defendant County of Chemung ("Defendant Chemung County") for discrimination and

retaliation under the Americans with Disabilities Act of 1990 ("ADA"); interference with the use

and enjoyment of Plaintiff's rights and retaliation under the Family and Medical Leave Act

("FMLA"); retaliation based on his relationship and association with an employee who filed a

Complaint against Defendants County of Chemung, William Schrom, and Joycelyn Bermingham,

in violation of Title VII of the Civil Rights Act; and against all Defendants for discrimination and

retaliation under the New York State Human Rights Law, together with any and all other causes

of action which can be reasonably inferred from the facts as set forth below.

## PARTIES

2.      Plaintiff Thomas Griffiths is a male citizen of the United States who currently resides in Horseheads, New York, and who is employed by Defendant Chemung County.

3.      Upon information and belief, at all times herein, Defendant Chemung County was and is a county in the State of New York.  Upon information and belief, Defendant Chemung County's headquarters are located in Elmira, New York.

4.      Defendant Chemung County is and was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State and local laws.

5.      Plaintiff is and was, at all times relevant herein, Defendant Chemung County's "employee" within the meaning of all relevant Federal, State and local laws.

6.      Defendant William Schrom ("Defendant Sheriff Schrom") is Defendant Chemung County's current Sheriff.

7.      Defendant Sheriff Schrom is and was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant State and local laws.

8.      Plaintiff is and was, at all times relevant herein, Defendant Sheriff Schrom's "employee" within the meaning of all relevant State and local laws.

9.      Defendant Joycelyn Bermingham ("Defendant Bermingham") is Defendant Chemung County's current Personnel Administrator.

10.      Defendant Defendant Bermingham is and was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant State and local laws.

11.      Plaintiff is and was, at all times relevant herein, Defendant Bermingham's "employee" within the meaning of all relevant State and local laws.

2

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

12.     This is a civil action for monetary damages and such other relief as the Court deems just and proper based upon Defendants' discrimination against Plaintiff as well as Defendants' retaliation against Plaintiff.

13.     This Court has jurisdiction over this action under 42 U.S.C. § 12101 *et. seq.*, 29 U.S.C. §§ 2601 *et seq.*, and under 28 U.S.C.A. §§ 1331 and 1343(4).

14.     Venue for this action properly lies in this district pursuant to 28 U.S.C § 1391.

15.     All conditions precedent to filing the instant action have been fulfilled.

16.     On or about September 6, 2022, Plaintiff served a Notice of Claim on Defendants.

17.     On or about June 23, 2022, Plaintiff filed a Complaint with the New York State Division of Human Rights and cross-filed with the Equal Employment Opportunity Commission.

18.     On or about November 29, 2022, Plaintiff received a Determination and Order of Dismissal For Administrative Convenience from the New York State Division of Human Rights.

19.     On information and belief from information provided by the New York State Division of Human Rights, the Equal Employment Opportunity Commission did not investigate Plaintiff's Complaint.

## FACTUAL BACKGROUND

### Plaintiff Is Hired By Defendant Chemung County

20.     On or about December 28, 1997, Plaintiff was hired as a Correctional Officer at the Chemung County Jail. Plaintiff was responsible for the care and custody of incarcerated individuals and for maintaining the safety and security of the facility.

21.     Throughout his employment, Plaintiff excelled in his position and has not received any negative performance reviews or disciplinary actions.

**Plaintiff Requests Disability Accommodations After Defendant Sheriff Schrom Is Elected**

22.     At the Chemung County Jail, Correctional Officers are required to work unscheduled, 16-hour "Mandatory Overtime" shifts.

23.     In or about 2018 Plaintiff was diagnosed with diabetes. To maintain and regulate his blood sugar, Plaintiff is required to take medication and self-administer insulin shots throughout the day. It is imperative that Plaintiff's insulin is kept in a temperature controlled, private refrigerator, free from the risk of contamination.

24.     Plaintiff needed a private place to store his insulin because he was worried that others would tamper with, or even take, the insulin, and then he would become very ill because it would take too long to go home and get his stored insulin.

25.     Because Plaintiff is unable to go longer than eight hours without insulin and because Defendant Chemung County could not provide Plaintiff a private refrigerator to store his insulin, Plaintiff was forced to return home after his eight-hour shifts to administer his medication.

26.     In 2019, Defendant Sheriff Schrom was elected Sheriff of Chemung County.

27.     In or about 2019, Plaintiff applied for intermittent FMLA leave, and requested as a reasonable accommodation that he be removed from Defendant Chemung County's "Mandatory Overtime List" and relieved of overtime shifts due to the inability to safely store and thereby obtain access to insulin while working.

28.     Plaintiff provided a physician's note substantiating the medical necessity for his requests.

29.     In or about 2019, Defendant Chemung County approved Plaintiff's reasonable accommodation request and FMLA intermittent leave and he was removed from the Mandatory Overtime List.

30.     Defendant Sheriff Schrom had the ultimate authority to approve or deny FMLA leave and requests for reasonable accommodations, but Sheriff Schrom did not generally get involved in individual employees' leave and accommodation requests.

31.     During the relevant time period, at least four other Corrections Officers were removed from the Mandatory Overtime List because of their medical conditions. On information and belief, each of the other Corrections Officer uses intermittent FMLA leave to be excused from mandatory overtime.

**County Executive Moss Is Elected And Immediately Removes Female
Employees In High Profile Positions**

32.     In or about the end of 2020, an election was held for Defendant Chemung County's Executive Position. In this election, former Sheriff Christopher Moss ("County Executive Moss") defeated Former Executive Mike Krusen for the County Executive position.

33.     When County Executive Moss began his term on January 1, 2019, he immediately removed female Directors/Commissioners and high-level staff and hired male replacements. Indeed, Plaintiff's wife had filed a separate action against the Defendant Chemung County, as described below.

34.     After Executive Moss replaced the positions with men, there were approximately three women who remained heads of departments out of approximately 25 department heads.

35.     When County Executive Moss was Sheriff of Chemung County, Sheriff Schrom was the Under Sheriff and the two worked closely together.

36.     On information and belief, after County Executive Moss became the County Executive, Defendant Sheriff Schrom and he remained close working allies and created a strong connection between the County Executive Office and the Sheriff's Office within Chemung County.

**Plaintiff Re-Applies For FMLA Leave And Defendant Chemung County Approves The
Renewal Of His Reasonable Accommodation**

37.     In or about 2020, Plaintiff's requested accommodation and intermittent FLMA leave (which exempted him from the Mandatory Overtime List) expired.

38.     Plaintiff re-applied for FMLA leave, and once again requested the same accommodation, removal from the Mandatory Overtime List due his inability to have access to his insulin while at work. Nothing in his requests changed from the previous year.

39.     In or about 2020, Plaintiff's reasonable accommodation was, again, approved and he continued to be exempt from Defendant Chemung County's Mandatory Overtime List.

**Plaintiff Re-Applies For FMLA And Defendant Chemung County Approves The Renewal
Of His Reasonable Accommodation**

40.     In or about 2021, Plaintiff's disability accommodation and intermittent FMLA leave, which exempted him from working mandatory overtime, expired.

41.     In or about 2021, Plaintiff re-applied for FMLA and his reasonable accommodation and stated the same reasons as the prior year for requesting removal from Defendant Chemung County's Mandatory Overtime List.

42.     In or about 2021, Plaintiff's reasonable accommodation and FMLA intermittent leave was, again, approved and he continued to be exempt from the Mandatory Overtime List.

**Plaintiff's Wife Reports Discrimination And Is Retaliated Against**

43.     In or about December 1995, Plaintiff's Wife, Kristin Griffiths ("Ms. Griffiths"), was hired as the Emergency Management Planner and Safety Coordinator for Defendant Chemung.

44.     In or about 2012, Ms. Griffiths was appointed as the Deputy Director of Administration for the Fire and Emergency Management office.

45.     Ms. Griffiths always received positive performance reviews.

46.     On or about February 14, 2021, Ms. Griffiths filed an employment discrimination complaint with the New York State Human Rights Division.

47.     On or about February 23, 2021, Ms. Griffiths filed an official "Workplace Violence Complaint" with Defendant Bermingham alleging "threatening, abusive and intimidating treatment" from County Executive Moss.

48.     In or about June 2021, Ms. Griffith's management and executive duties were given to a male employee with significantly less experience in retaliation for her complaints of discrimination.

49.     In or about November 2021, Ms. Griffiths brought a civil action against Defendant Chemung County and County Executive Moss for gender discrimination and retaliation.

**Plaintiff Is Retaliated Against Because His Wife Filed A Case Against Defendants**

50.     Plaintiff's deadline to renew his FMLA paperwork was May 2, 2022.

51.     Plaintiff's physician was away on vacation during April 2022, and Plaintiff was unable to get the forms completed by May 2, 2022. Despite this, Defendants were aware that Plaintiff would need continued intermittent leave and the same reasonable accommodation he had been given for the past three years.

52.     Without any prior notice and before the end of the day, on or about May 2, 2022, Sergeant Kyle Murphey ("Sgt. Murphy") informed Plaintiff that his FMLA leave had run out because he did not have the paperwork in yet and, consequently, Defendant Chemung County placed him back on the Mandatory Overtime List. Sgt. Murphy told Plaintiff, without any prior notice, that he would be required to work an unscheduled, 16-hour shift that day.

53.    At the time Sgt. Murphy told Plaintiff Defendant was no longer accommodating his disability or giving him intermittent FMLA leave, Sgt. Murphy and Defendants were aware that Plaintiff had an ongoing disability that needed an accommodation and that he was entitled to leave under the FMLA.

54.    Plaintiff explained that he was in the process of re-applying for FMLA but was unable to turn in the necessary paperwork until his doctor returned from vacation.

55.    Plaintiff assured Sgt. Murphy that his paperwork would be turned in as soon as possible.

56.    Plaintiff further complained that being required to work 16-hour overtime shifts without insulin could severely impact his blood sugar, causing him to become ill.

57.    Instead of reasonably accommodating Plaintiff for a known disability, Sgt. Murphy informed Plaintiff that he would still be required to work a double shift—16 hours—that day.

58.    Plaintiff could not believe that Sergeant Murphy had refused to extend the reasonable accommodation while he waited for his doctor to return, especially because his requests had contained the exact same information for the past 3 years, based on a technicality with FMLA paperwork, which did not relate to his reasonable accommodation request under the ADA and NYSHRL.

**Plaintiff Is Rushed To The Hospital For High Blood Sugar Levels Due To His Inability To Access His Insulin While Working Because Defendants Refused To Provide Him A Reasonable Accommodation**

59.    Later that day, soon after Plaintiff completed the unscheduled 16-hour overtime shift, he spent five hours in the Corning Guthrie Hospital with a perilously high blood sugar level.

60.    Plaintiff had to request a sick day to recover from this incident.

61.     Defendant did not offer Plaintiff any accommodation or any way for him to keep his medication at work.

**Plaintiff Again Requests Disability Accommodations**

62.     On or about May 4, 2022, Plaintiff sent an e-mail to Major Raymond Hodge ("Major Hodge") and expressed concern that his disability accommodation was no longer being honored and requested a locked or secured refrigerator to store his medication at work.

63.     Concerned about his health, Plaintiff decided to ask for a short-term accommodation which would allow him to keep his medication at work during 16-hour shifts.

64.     Major Hodge never responded to Plaintiff's email, never followed up with Plaintiff regarding his health concerns, and ignored Plaintiff's disability accommodation request.

65.     Defendants failed to engage in any form of interactive process to accommodate Plaintiff.

**Defendants Reject Plaintiff's FMLA Request, Even Though The
Paperwork Contained The Same Information For At Least Three Years**

66.     On or about May 10, 2022, after Plaintiff's doctor returned, he submitted his FMLA paperwork requesting intermittent leave and a renewal of his disability accommodations and removal from the Mandatory Overtime List.

67.     Plaintiff felt relieved and confident that once Defendant Chemung reviewed the paperwork, his accommodations would quickly resume and he would no longer be required to work shifts that put his health at a severe risk.

68.     Plaintiff had no doubt that his paperwork would be approved by Defendant Chemung, given the paperwork contained the exact same information and stated the same reasons for accommodations that had been approved for the past three years.

69.     Later that day, Plaintiff was informed by Lieutenant Julian Hughey ("Lt. Hughey") that his paperwork could not be approved because there was nothing in the paperwork that stated that he could not work more than eight hours.

70.     Plaintiff wondered that if this detail was so important and required Defendant Chemung to deny his paperwork in its absence, why they had never required him to include it for the past three years.

71.     Plaintiff questioned why Defendant Chemung had, all of a sudden, decided to reject his FMLA paperwork due to a minor detail that had never been included.

72.     Plaintiff began to wonder if Defendant Chemung was now denying his accommodations in retaliation for his wife's complaints of a hostile work environment and gender discrimination at Defendant Chemung and because she filed a civil action, as it was the only thing different from his previous requests.

73.     Plaintiff was in disbelief that Defendant Chemung would show such blatant disregard for the health and safety of their employees by forcing Plaintiff to continue to work 16-hour shifts and continue to ignore Plaintiff's request for a refrigerator to store his medications at work.

**Plaintiff Experiences Severe Illness Due Defendants' Refusal To
Approve His FMLA Or Provide Disability Accommodations**

74.     Because they denied his FMLA paperwork, Defendant Chemung County required Plaintiff to work an unscheduled, 16-hour overtime shift despite the fact that several Defendant Chemung employees were aware that Plaintiff did not have access to his insulin and that working 16-hour shifts put Plaintiff's health at a severe risk.

75.     Upon information and belief, Defendants were not concerned with a diabetic employee's need for accommodations or medication.

76.     Upon information and belief, Defendants prioritized punishing an employee and her spouse for complaints of discrimination over the health, safety, and well-being of their employees.

77.     After the end of the shift, Plaintiff became very ill because he was unable to take his medications during the 16-hour shift and had to go to the hospital and take off the next day. Plaintiff again had to request a sick day to recover.

**Yet Again, Plaintiff Experiences Severe Illness Due Defendants' Refusal
To Approve His FMLA Or Provide Disability Accommodations**

78.     On or about May 23, 2022, Defendant Chemung County once again required Plaintiff to work an unscheduled, 16-hour overtime shift, knowing it was a risk to his health.

**Plaintiff Resubmits FMLA Paperwork, Which Explicitly States He Is Unable To
Work Shifts Exceeding Eight Hours**

79.     On or about May 27, 2022, Plaintiff's doctor resubmitted his FMLA paperwork, which stated that Plaintiff was unable to work shifts that exceeded eight hours because it would be unsafe to experience vertigo, a symptom of lack of insulin, in a jail environment.

**Defendants Unreasonably Scrutinize Plaintiff's Request For A Reasonable Accommodation**

80.     After Plaintiff updated his FMLA paperwork and request for a reasonable accommodation, he was notified by Defendant Sheriff Schrom's Administrative Assistant Mackenzie Roberts ("Admin Assistant Roberts") that his FMLA paperwork was "being reviewed."

81.     On information and belief, Sheriff Schrom directed Admin Assistant Roberts to prolong review of Plaintiff's paperwork because it had never taken this long before and Sheriff Schrom had the ultimate authority to delay the process.

82.     During this time, Defendants, aware of Plaintiff's need for a reasonable accommodation, refused to provide one or engage in any form of interactive process and all of his reasonable accommodation requests continued to be denied or ignored.

**Defendants Formulate A New Pretextual Reason To Justify Terminating Plaintiff's Long-Standing Disability Accommodations**

83.     After Plaintiff returned home from his shift, on or about June 13, 2022, a deputy stopped by Plaintiff's home unannounced to deliver a letter from Defendant Sheriff Schrom.

84.     Plaintiff had never heard of a Deputy Sheriff coming to an employee's home to present a letter denying a request for an accommodation, or anything else. Letters were usually given while the employee was working.

85.     Defendant Sheriff Schrom's letter stated that Plaintiff would be required to take a medical leave of absence until his paperwork was fixed because his healthcare provider "stated that [Griffiths had] Vertigo, and it is unsafe for [Griffiths] to work in a jail environment."  Yet, Plaintiff's doctor never stated that it was unsafe for him to work in a jail environment. Rather, Plaintiff's doctor had explained that it *would be* unsafe for Plaintiff to experience vertigo, a symptom due to lack of access to insulin, while working, which further justified Plaintiff's accommodation to be removed from Defendant Chemung's Mandatory Overtime List.

86.     Plaintiff was only at risk to experience vertigo if he was unable to access his insulin.

87.     In the letter, Defendants also required Plaintiff to use his sick days to receive payment for the time they were placing him on leave. Plaintiff had a limited number of sick days and already used three sick days after the incident in which he was ill because he was unable to access his insulin during a 16-hour overtime shift.

88.     Upon information and belief, Defendants purposefully manipulated Plaintiff's doctor's statement to justify the continued termination his disability accommodations and denial

of FMLA protected intermittent leave in retaliation for his wife's complaints of discrimination at Defendant Chemung.

89.     Upon information and belief, Defendant Chemung County forced Plaintiff to take a leave of absence in retaliation for his wife's complaints of discrimination at Defendant Chemung.

**Plaintiff Complains To Defendant Bermingham About Retaliation**

90.     On or about June 17, 2022, Plaintiff sent Defendant Bermingham a written complaint, which stated:

> This is a formal complaint regarding the letter I received from Sheriff [Defendant] Schrom, dated June 13, 2022, regarding concerns with my request for Intermittent Family Medical Leave after consulting with your office. I have submitted the same forms with the same language for at least the past three years. The forms have been accepted in the past without issue, why are they not being accepted now? Please explain this change.
>
> I would also like to express my deep concern regarding the comment by the Sheriff's assistant, Mackenzie Roberts, "your forms are being reviewed". When I asked who exactly was reviewing my medical forms, and therefore had access to my private medical information without my consent, I was never given an answer. I question whether a HIPPA violation has also been committed.
>
> I request that you and the Sheriff reverse this medical leave of absence and allow me to return to my normal duties with the same accommodations that have been granted to me in the past three years. I look forward to your response.

**Plaintiff Files A Complaint With The New York Division Of Human Rights, Alleging Defendant Chemung County Denied His Long-Standing Disability Accommodation In Retaliation For His Wife's Complaint Of Gender Discrimination And Retaliation**

91.     On or about June 22, 2022, Plaintiff filed a complaint with the New York State Division of Human Rights, alleging Defendant Chemung County was, without cause, denying his reasonable accommodation request in retaliation for his wife's complaints of discrimination.

**Plaintiff Visits His Doctor**

92.     On or about June 23, 2022, Plaintiff scheduled an appointment with his health care provider to remedy the County's concerns that "vertigo" was included in his medical notes.

93.     At the visit, Plaintiff's doctor increased his medication dosage from two pills and two shots a day to two pills and up to five shots a day depending on his blood sugar level, and a continuous blood sugar monitor was imbedded in the back of his arm because Defendants continued to require him to work 16-hour shifts.

94.     Plaintiff was forced to imbed a blood sugar monitor in his arm because of Defendant's continued refusal to grant him intermittent leave or a reasonable accommodation, and continued requirement that he work 16-hour shifts.

95.     Plaintiff's need for an increase of daily insulin intake only further justified a need to keep his medications with him at work.

**Plaintiff Resubmits FMLA Paperwork To Meet Defendant Chemung County's Specifications**

96.     On or about June 23, 2022, Plaintiff, resubmitted his FMLA paperwork to meet Defendants' specifications, which required his doctor to omit the reference to vertigo.

97.     On June 27, 2022, Plaintiff received a letter from Defendant Bermingham dated June 23, 2022, stating that it was in response to his complaint made on July 13, 2022, and approving part of his FMLA leave request and denying his reasonable accommodation requests.

98.     Defendant Bermingham also stated that Plaintiff was cleared to go back to work on June 27, 2022, the same day he received the letter.

99.     However, while Defendant Bermingham said that his FMLA leave request had been approved, it only allowed "intermittent [leave] for episodes of incapacity or flare ups, which are estimated to occur once a month and may last for up to five days per episode."

100.     The letter did not even address Plaintiff's specific request to not work more than an eight-hour shift, even though that had been specifically part of his FMLA leave for at least the past three years.

101.     At this point, Defendants were merely letting Plaintiff return from forced disability leave, but he were requiring Plaintiff to work 16-hour shifts with no ability to store and access his required medications.

### Plaintiff Is Required To Work Mandatory Overtime

102.     On or about June 29, 2022, Plaintiff was required to work a 16-hour mandatory overtime shift.

### Defendants Ignore Plaintiff's Request For Reasonable Accommodations

103.      Plaintiff never received an update of the status of his request to not work mandatory overtime.

104.     Plaintiff was never provided a reasonable accommodation that would allow him to store his medications while working.

105.     Upon information and belief, Defendant Chemung County ignored Plaintiff's concerns and requests regarding disability accommodations in retaliation for his wife's complaints of discrimination at Defendant Chemung.

106.     As a result, Plaintiff was (and continued to be) forced to carry a personal cooler and lock while working at Defendant Chemung to access his diabetes medication and insulin.

107.     Plaintiff was also forced to have a blood sugar monitor physically imbedded into his arm because of Defendants' continued refusal to grant his accommodation request.

**Other Similarly Situated Employees Are Granted The Reasonable Accommodation Of Being Removed From The Mandatory Overtime List**

108.    At least two other Chemung County employees have been granted an accommodation and removed from the Mandatory Overtime List.

109.    In late 2022, another employee who had an 8-hour restriction based on a disability and wanted it removed was told by Defendants that in order to have it removed, he had to have a doctor's note.

Meanwhile, Defendants repeatedly rejected Plaintiff's reasonable accommodation and FMLA request to not work mandatory 16-hour shifts even after providing a physician's note.

110.    In addition, Plaintiff is stuck on hospital duty and forced to work up to 16 hours while two other officers, who work fewer shifts than Plaintiff, have been granted 8-hour restrictions and do not have to work mandatory overtime.

111.    Plaintiff's request for a reasonable accommodation was denied in retaliation for his wife bringing a complaint of discrimination against Chemung County.

**CAUSES OF ACTION**

**FOR THE FIRST CAUSE OF ACTION**
*(Disability Discrimination in Violation of the ADA)*
*Against Defendant Chemung County*

112.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

113.    Defendant Chemung County has discriminated against Plaintiff on the basis of his disability and request for a reasonable accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,* ("ADA"). Plaintiff has suffered disparate treatment as a result of Defendant's wrongful conduct.

114.    Defendant Chemung County has discriminated against Plaintiff by treating him

differently from and less preferably than similarly situated non-disabled employees and failing to provide a reasonable accommodation or engage in an interactive process.

115.     Defendant Chemung County's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

116.     By reason of Defendant Chemung County's discrimination, Plaintiff is entitled to all remedies available for violations of the ADA.

## AS FOR THE SECOND CAUSE OF ACTION
*(Retaliation in Violation of the ADA)*
*Against Defendant Chemung County*

117.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

118.     Plaintiff requested a reasonable accommodation for his disability.

119.     Defendant Chemung County rejected the reasonable accommodation, providing baseless reasons for the denial, and failed to provide a reasonable alternative to the accommodation request.

120.     Plaintiff repeatedly objected to and reported to Defendant about Defendant's discriminatory treatment of him.

121.     In retaliation, Defendant Chemung County subjected Plaintiff to a series of adverse employment actions including, but not limited to, forcing him to take a medical leave of absence, reducing how much time Plaintiff can take off under FLMA intermittent leave, and forcing Plaintiff to work 16-hour shifts.

122.     Defendant Chemung County's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff.

123.     As a result of Defendant Chemung County's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

124.     By reason of Defendant Chemung County's retaliation, Plaintiff is entitled to all remedies available for violations of ADA.

## AS FOR THE THIRD CAUSE OF ACTION
*(Discrimination in Violation of the NYSHRL)*
*Against All Defendants*

125.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

126.     Defendants have discriminated against Plaintiff on the basis of his disability and in violation of the New York State Human Rights Law, New York State Executive Law § 296, *et seq.,* and as a result, Plaintiff has suffered and disparate treatment as a result of Defendant's wrongful conduct.

127.     Defendant has discriminated against Plaintiff by treating him differently from and less preferably than similarly situated male employees and by subjecting him to adverse employment actions, including but not limited to, forcing Plaintiff to take a medical leave of absence, arbitrarily reducing how much time Plaintiff can take off under FLMA intermittent leave, and forcing Plaintiff to work16-hour shifts.

128.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff.

129.     As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to potential lost earnings and benefits, other financial loss, and non-economic damages.

130.     By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of the New York State Human Rights Law.

## AS FOR THE FOURTH CAUSE OF ACTION
*(Retaliation in Violation of the NYSHRL)*
*Against All Defendants*

131.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

132.     Plaintiff's wife complained and filed a lawsuit about being subjected to a hostile work environment and gender discrimination while working at Defendant Chemung County.

133.     In retaliation, Defendants denied Plaintiff's reasonable accommodation requests to work a modified shift which, prior to Plaintiff's wife's complaint, had been routinely granted to him for the past three years.

134.     Plaintiff repeatedly objected to and reported to Defendants about Defendants' discriminatory treatment of him.

135.     Defendants continued its campaign of retaliation against Plaintiff by subjecting Plaintiff to a series of adverse employment actions including, but not limited to, forcing Plaintiff to take a medical leave of absence, arbitrarily reducing how much time Plaintiff can take off under FMLA intermittent leave, and unwarrantedly forcing Plaintiff to work 16-hour shifts in violation of the New York State Human Rights Law.

136.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff.

137.     As a result of Defendants' conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to potential lost earnings and benefits, other financial loss, and non-economic damages.

138.     By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of the New York State Human Rights Law.

## AS FOR THE FIFTH CAUSE OF ACTION
*(Retaliation Under the FMLA)*
*Against Defendant Chemung County*

139.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

140.     Plaintiff was entitled to FMLA intermittent leave to care for his disability, was routinely granted intermittent leave, and requested the entitled leave when his leave expired in 2020.

141.     When Plaintiff's wife, who also works for Chemung County, complained of being subjected to hostile work environment and gender discrimination, Defendant Chemung County retaliated against Plaintiff by taking adverse employment actions against him, including but not limited to, forcing Plaintiff to take a medical leave of absence, reducing how much time Plaintiff can take off under FMLA intermittent leave in violation of the statute, and unwarrantedly forcing Plaintiff to work 16-hour shifts.

142.     As a result of Defendant Chemung County's retaliatory acts, Plaintiff has suffered monetary damage, irreparable injury, mental anguish, pain and suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

143.     Defendant Chemung County's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

144.     Plaintiff is entitled to the maximum damages allowable under this law.

## AS FOR THE SIXTH CAUSE OF ACTION
*(Interference Under the FMLA)*
*Against Defendant Chemung County*

145.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

146.    Plaintiff was entitled to FMLA intermittent leave to care for his disability, was routinely granted intermittent leave, and requested the entitled leave when his leave expired in 2020.

147.    Defendant Chemung County interfered with Plaintiff's enjoyment of his FMLA rights by denying Plaintiff intermittent leave to be used as he needed and instead placed unlawful limits on how the leave could be used, harassing Plaintiff for additional information it previously did not need to grant him intermittent leave previous years, and forcing him to work 16-hour shifts.

148.    Defendant Chemung County had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

149.    As a result of Defendant Chemung County's acts of interference, Plaintiff has suffered monetary damage, irreparable injury, mental anguish, pain and suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

150.    Defendant Chemung County's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

151.    Plaintiff is entitled to the maximum damages allowable under this law.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff demands judgment against Defendants, for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other relief to which the Plaintiff is entitled. It is specifically requested

that this Court grant judgment in favor of Plaintiff as follows:

A. Enter a declaratory judgment, stating that Defendants and all of its affiliates', subsidiaries', practices, policies, and procedures subjected Plaintiff to disability discrimination and retaliation because of Plaintiff's wife's complaints of discrimination at Defendant Chemung County, in violation of the Americans with Disabilities Act, the New York State Human Rights Law, and the Family and Medical Leave Act;

B. Award injunctive relief against Defendants, its affiliates, and subsidiaries, including Defendants' affiliates, and Defendants' subsidiaries' officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in the unlawful practices, policies, customs, and usages set forth herein;

C. Award injunctive relief directing Defendants, its affiliates, and its subsidiaries to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect employees of Defendants; and,

D. Enter judgment against Defendants on all causes of action and an award of compensatory damages, including for emotional distress and medical expenses, punitive and/or exemplary damages, attorneys' fees, and pre- and post-judgment interest, in an amount to be determined at trial by the jury, and further relief as this

Honorable Court deems just, equitable and proper.

Dated: New York, New York
February 24, 2023

Respectfully submitted,


GODDARD LAW PLLC
*Attorney for Plaintiff*

By: *Megan Goddard*
Megan S. Goddard, Esq.
Siobhan Klassen, Esq.
39 Broadway, Suite 1540
New York, NY 10006
Office: 646-504-8363
Fax: 212-473-8705
Megan@goddardlawnyc.com
Siobhan@goddardlawnyc.com